IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADILENE P.,[1]                                                    Case No. 6:20-cv-00560-SB

                          Plaintiff,                             **OPINION AND ORDER**

                  v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                          Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Adilene P. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C.

_____

        [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

        [2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is named as the defendant in place of "Commissioner Social Security Administration." *See* FED. R. CIV. P. 25(d)(1).

§ 405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in June 1993, making her twenty-one years old on December 31, 2014, her alleged disability onset date. (Tr. 41, 313.) Plaintiff graduated from high school and has past relevant work experience as a coffee maker, recreation aide, composite job of kitchen helper/dishwasher and food service worker, and fast-food worker. (Tr. 26, 302.) In her

applications, Plaintiff alleged disability due to posttraumatic stress disorder ("PTSD"), depression, and anxiety. (Tr. 301.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 16, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 88, 102, 119, 134, 158.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 13, 2018. (Tr. 34-72.) On March 14, 2019, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 18-28.) On, February 10, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at

step five of the analysis, where the Commissioner must show the claimant can perform other

work that exists in significant numbers in the national economy, "taking into consideration the

claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d

at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262

F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 18-28.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since December 31, 2014, her alleged disability onset date. (Tr. 20.)

At step two, the ALJ determined that Plaintiff suffered from the following severe, medically

determinable impairments: "generalized anxiety disorder, depressive disorder, PTSD, and history

of alcohol and marijuana use." (Tr. 21.) At step three, the ALJ concluded that Plaintiff did not

have an impairment that meets or medically equals a listed impairment. (*Id*.) The ALJ then

concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of

work at all exertional levels, subject to these nonexertional limitations: (1) Plaintiff has the

ability to understand, remember, and carry out short, simple, routine job instructions consistent

with unskilled work; (2) Plaintiff should only have occasional interaction with the public and

coworkers; (3) Plaintiff needs a static work environment with few changes in work routines and

settings; and (4) Plaintiff cannot perform high production work such as assembly line quota

work. (Tr. 22-23.) At step four, the ALJ concluded that Plaintiff was not able to perform her past

relevant work as a coffee maker, recreation aide, composite job of kitchen helper/dishwasher and

food service worker, or fast-food worker. (Tr. 26.) At step five, the ALJ determined that Plaintiff

was not disabled because a significant number of jobs existed in the national economy that she

could perform, including work as a collator operator, photocopy machine operator, and inserting machine operator. (Tr. 27.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) rejecting Plaintiff's symptom testimony; (2) discounting the opinion of her treating psychologist, Dr. Lori Allen; and (3) discounting the opinion of an examining psychologist, Dr. William McConochie. (Pl.'s Opening Br. at 4-21.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and is supported by substantial evidence in the record, and therefore the Court affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with

the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 23, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

### 1.    Activities of Daily Living

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations").

The ALJ discounted Plaintiff's symptom testimony based on her reported activity level. (Tr. 24.) The ALJ noted that despite Plaintiff's allegations of disabling symptoms, Plaintiff "can perform her self-care independently[,] can drive and has a license[,] can do routine household chores and grocery shop . . . can cook meals for herself[, and] has a couple of friends whom she visits regularly." (*Id*.) Plaintiff also "likes walking, hiking, and picknicking[,] plays games online[, and her d]aily activities include going to work, going to therapy or a group session, visiting a friend, relaxing, and having dinner." (*Id*.) The ALJ also noted that Plaintiff "has had significant work activity for years since her amended alleged onset date [and Plaintiff] continues to work part time." (*Id*.) Further, "in March 2015, [Plaintiff] indicated that her job at the coffee shop did not work out because they were overstaffed [suggesting] that it was not her medical condition that prevented her from working." (*Id*.) The Court finds that the inconsistency between Plaintiff's activities and her alleged limitations was a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony and was supported by substantial evidence in the record. *See Burrell*, 775 F.3d at 1137-38; *Ghanim*, 763 F.3d at 1165; *Garrison*, 759 F.3d at 1016.

Plaintiff argues that the ALJ erred by failing specifically to identify which aspects of Plaintiff's testimony were inconsistent with her activities of daily living. (Pl.'s Opening Br. at 15-17.) Plaintiff is correct that Ninth Circuit authority "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102 and citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)). In *Lambert*, the Ninth Circuit held that it was not enough for the ALJ to "not[e] generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other

evidence'" because "this 'boilerplate statement' . . . which is 'routinely include[d]' in ALJ decisions denying benefits, did not 'identify what parts of the claimant's testimony were not credible and why.'" *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1103). In that case, the ALJ did not identify specific activities of daily living or point to specific medical evidence that contradicted the claimant's allegations of disabling impairments, and the Ninth Circuit found that the ALJ's "high-level reasons" to discount the claimant's testimony did "not permit meaningful review." *Lambert*, 980 F.3d at 1277-78.

Here, the ALJ's explanation for discounting Plaintiff's testimony went beyond boilerplate. The ALJ first summarized Plaintiff's symptom testimony, explaining that she reported impaired concentration and memory, trouble adapting to changes, intrusive thoughts, and difficulty managing stress. (Tr. 23.) The ALJ next found that Plaintiff's statements regarding "these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ then identified a long list of Plaintiff's daily activities that contradicted Plaintiff's testimony about her disabling mental health symptoms, including her significant work history since her alleged onset date, her current part-time work, her ability to stay busy all day without having to rest, and spending the time when she is not working with friends, grocery shopping, driving, gaming online, cooking, hiking, and picnicking. (Tr. 24.) Although the ALJ did not tie each of Plaintiff's daily activities to a specific disabling symptom (e.g., working with small children at a daycare facility is inconsistent with an alleged inability to manage stress, or gaming online contradicts an alleged inability to concentrate), this Court does not interpret *Lambert* to require that level of granularity. *See Lambert*, 980 F.3d at 1277 (holding that "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when

denying benefits" (citing *Treichler*, 775 F.3d at 1103)); *see also Young v. Saul*, 845 F. App'x 518, 519-20 (9th Cir. 2021) ("The ALJ . . . gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.' The ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." (citing *Lambert*, 980 F.3d at 1277)); *Roscioli v. Saul*, No. 19-cv-03894-VKD, 2020 WL 6940937, at *8 (N.D. Cal. Nov. 25, 2020) (citing *Lambert* standard but holding that "the cited testimony appears to be entirely consistent with the ALJ's finding that [the claimant] was doing well and could work, despite his mental impairments").

The ALJ must provide sufficient detail about the inconsistencies between Plaintiff's symptom testimony and her daily activities to allow a reviewing court reasonably to discern the ALJ's path. *Cf. Brown-Hunter*, 806 F.3d at 494 (holding that the ALJ erred where a reviewing court could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible"); *see also Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (finding that although "the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonably discern' the ALJ's path") (citation omitted). Here, the Court can reasonably discern from the ALJ's list of Plaintiff's alleged mental health symptoms and the list of her reported daily activities that the ALJ concluded that Plaintiff's ability to work part-time and

spend the remainder of her days engaging in high-functioning activities was inconsistent with the alleged severity of her mental health symptoms.[3]

In sum, the Court concludes that the ALJ did not err in discounting Plaintiff's symptom testimony based on her reported activities.

### 2.    Objective Medical Evidence

The ALJ also discounted Plaintiff's allegations of disabling mental health symptoms because they were inconsistent with the objective medical evidence. (Tr. 23-24.) This was a clear and convincing reason for discounting Plaintiff's testimony. *See Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony on the ground that it was "inconsistent with the medical evidence").

Substantial evidence supports the ALJ's findings. Although the ALJ acknowledged the medical records showing that Plaintiff sometimes reported panic attacks and feeling down and tearful, the ALJ cited several medical records reflecting that Plaintiff's depression and anxiety were improving, that she had switched to a natural and holistic approach to her mental health issues in lieu of medication, and that she was no longer taking medication because she did not believe she needed medication. (Tr. 24.) Plaintiff "urges the Court to adopt a different interpretation of the evidence, but the ALJ's finding is supported by substantial evidence" here. *Decarlo v. Saul*, 836 F. App'x 620, 622 (9th Cir. 2021) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

---

[3] In contrast, this Court was not able reasonably to discern the ALJ's path in *Rebecca S. v. Kijakazi*, No. 6:20-cv-01289-SB, 2021 WL 5305869, at *5 (D. Or. Nov. 15, 2021), because in that case the ALJ did not identify which testimony he found not credible and "the cited activities do not appear to undermine Plaintiff's testimony."

In sum, the Court finds that the ALJ did not err by discounting Plaintiff's allegations of disabling mental health impairments in light of her daily activities and medical record evidence.

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law[4]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence [in the record].'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,

---

[4] Plaintiff filed her application on September 24, 2016. (Tr. 18.) The new regulations governing medical opinion evidence therefore do not apply. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations that apply to Social Security applications filed on or after March 27, 2017).

asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

## B.    Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinions of her treating psychologist, Dr. Allen, and an examining psychologist, Dr. McConochie. (*See* Pl.'s Opening Br. at 4-5.)

### 1.    Dr. Allen

#### a.    Dr. Allen's Opinion

On March 2, 2017, Dr. Allen wrote a one-page "Diagnostic Summary" for Plaintiff. (Tr. 464-66.) Dr. Allen indicated that she began treating Plaintiff on January 6, 2015. (Tr. 465.) In opining on Plaintiff's "past and current functional limitations," Dr. Allen explained that Plaintiff had improved over time but found full-time work too stressful:

> When [Plaintiff] first began therapy she was unable to work due to intense levels of anxiety and depression. [Plaintiff] had panic attacks at work and would miss work because of trauma related triggers . . . her symptoms seemed to be triggered by work related stressors. Over the course of two years, [Plaintiff] has improved in some areas; she has been able to work part time, is able to better manage her irritability and anger and has been able to live independently. However, her symptoms intensify with stress, and she has been unable to withstand stress related to a full-time job. Driving continues to be highly stressful [and] she avoids many social interactions and activities due to emotional instability and anxiety. [W]hen she attempts to work over 20 hours, she has consistently become overwhelmed and symptoms intensity, often leading her to lose jobs or take significant amounts of time off. She reports frequent panic attacks on mornings before work and occasionally at work.

(Tr. 465.) In June 2017, Dr. Allen filled out a form detailing the reasonable accommodations that would be required from Plaintiff's employer, Head Start, but the form in question is unsigned. (Tr. 796-97.)

On October 19, 2018, Dr. Allen completed a "Psychological Summary" for Plaintiff at the request of Plaintiff's attorney. (Tr. 764-65.) The summary mirrored the March 2, 2017 "Diagnostic Summary," with the addition of Dr. Allen's opinion that "[o]ver the past 3 years, [Plaintiff] has made significant improvements in functioning" but that current symptoms "inhibit her from being able to be consistent at work, work for 8 hours multiple days in sequence, and responding appropriately to criticism." (Tr. 764.) Dr. Allen noted that Plaintiff's "symptoms continue to intensify when under stress, and she is unable to withstand the stress related to working a full-time job." (Tr. 765.) Dr. Allen concluded that when Plaintiff "attempts to work over 20 hours, she has consistently become overwhelmed and symptoms escalate, sometimes leading to longer periods of dysfunction." (*Id.*)

### b.    The ALJ's Treatment of Dr. Allen's Opinion

The ALJ gave Dr. Allen's opinion "little weight." (Tr. 26.) The ALJ discounted Dr. Allen's opinion because "it is inconsistent with the overall medical evidence in the record, including lack of prescription medications to treat the [Plaintiff's] allegedly debilitating impairments, the opinions of the State agency evaluators, [] the [Plaintiff's] daily activities, including continued work activity [and because Dr. Allen's] opinion appears to be based on the [Plaintiff's] self-reports." (Tr. 26.)

### c.    Disposition

The ALJ provided several legally sufficient reasons to discount Dr. Allen's opinion.

Generally, "a treating physician's opinion is . . . afforded the greatest weight in disability cases, [however,] it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Taylor v. Astrue*, No. CV 08-0230-AA, 2009 WL 10690945, at *6 (D. Or. Mar. 25, 2009) (citing *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004)) (simplified). When evidence in the record contradicts the opinion of a

treating physician, the ALJ must present "specific and legitimate reasons" for discounting the treating physician's opinion, supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Here, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to discount Dr. Allen's opinion.

First, the ALJ noted a lack of objective medical evidence supporting Dr. Allen's opinion, including that Plaintiff does not take any medication for her allegedly debilitating anxiety and depression. (Tr. 26.) Plaintiff responds that the ALJ failed to acknowledge that Plaintiff had tried several different medications but experienced side effects. (Pl.'s Opening Br. at 20.) Plaintiff's allegations of side effects resulting from past attempts to take medication is supported by evidence in the record. (*See, e.g.*, Tr. 435, "Clonazepam . . . [h]elps but saps energy"; Tr. 438, "excessive sweating" and "changed to paroxetine which helped [but Plaintiff had u]nfortunate adverse reaction [of] strong self-harm thinking"; Tr. 440, "lighter sleep" and "Sertraline . . . [w]orked for a while" but may have caused insomnia and agitation). However, the record also reflects that Plaintiff chose, against medical advice, to discontinue taking medications that had been effective, that Plaintiff refused recommended medications, that she did not believe she needed medication, and that she preferred a natural and holistic approach instead of pharmaceuticals. (*See* Tr. 368, 370, 383, 508, 513, 768, 864.) In light of this evidence, the Court concludes that the ALJ's interpretation of the record was reasonable and the Court will not second-guess the ALJ's findings. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

PAGE 14 – OPINION AND ORDER

Second, the ALJ found that Dr. Allen's opinion was inconsistent with Plaintiff's activities of daily living, including Plaintiff's continued part-time work activity. (Tr. 26.) An ALJ may discount a medical opinion where the assessment is "inconsistent with [the claimant's] daily activities." *Hernandez v. Saul*, 808 F. App'x 425, 427 (9th Cir. 2020); *see also Concannon v. Saul*, No. 20-15732, 2021 WL 2941767, at *2 (9th Cir. July 13, 2021) (finding that "conflicts between a physician's opinion and a claimant's activities are specific and legitimate reasons" for discounting the opinion) (citing *Ghanim*, 763 F.3d at 1162-63).

The ALJ's finding was supported by substantial evidence in the record. Specifically, Plaintiff maintained steady part-time employment during the relevant time period, and she testified that her current employer, Head Start, only needed her in a part time capacity. (Tr. 24, 54.) Furthermore, although Dr. Allen opined that full-time work caused Plaintiff's symptoms to "intensify, often leading to her losing jobs" (Tr. 465), the record indicates that Plaintiff's employment often ended for reasons unrelated to her impairments. (*See, e.g.*, Tr. 443, March 16, 2015, record indicates "[c]offee shop [job] did not work out. They were overstaffed as it turns out"; Tr. 61, Plaintiff testified that she would be temporarily laid off from her job in the summer and would "collect unemployment"; Tr. 61-62, Plaintiff testified she "called HR and I quit" a job as a hotel housekeeper because it required 13-hour shifts and was too physically demanding; *but see* Tr. 322, February 24, 2017, Plaintiff self-reports she had been "let go" from a job because her "coworkers were very critical and would yell at [Plaintiff] often, causing [Plaintiff] to be anxious"). The record also demonstrates that Plaintiff failed to show up for work for reasons unrelated to her mental health impairments. (*See, e.g.*, Tr. 768, on March 2, 2018, Plaintiff told a provider "that she has to take time off work because she can't be around others when she is

PAGE 15 – OPINION AND ORDER

gasey [sic]" and that "she cannot go to work with a rash around her mouth.")[5] The Court

concludes that the ALJ did not err in discounting Dr. Allen's opinion as inconsistent with

Plaintiff's activities of daily living.

Finally, the ALJ discounted Dr. Allen's opinion, in part, because the opinion was based

on Plaintiff's self-reports. (Tr. 26.) "A physician's opinion of disability premised to a large

extent upon the claimant's own accounts of his symptoms and limitations may be disregarded

where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*,

169 F.3d 595, 602 (9th Cir. 1999) (simplified). However, "[t]he report of a psychiatrist should

not be rejected simply because of the relative imprecision of the psychiatric methodology[.]"

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Blankenship v. Bowen*, 874 F.2d

1116, 1121 (6th Cir. 1989)) (simplified). "Psychiatric evaluations may appear subjective,

especially compared to evaluation in other medical fields" and "[d]iagnoses will always depend

in part on the patient's self-report, as well as on the clinician's observations of the patient [b]ut

such is the nature of psychiatry." *Id.* "Thus, the rule allowing an ALJ to reject opinions based on

self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* (holding

that the ALJ erred by discounting a medical opinion based on its reliance on the plaintiff's self-

reports, noting that the opinion also included "a clinical interview and a mental status evaluation

[which are] objective measures [that] cannot be discounted as a 'self-report'").

Here, unlike in *Buck*, Plaintiff does not identify any objective findings that would support

Dr. Allen's conclusions, and Dr. Allen's records do not appear to include any objective

---

[5] In this same March 2018 encounter, Plaintiff grew upset with a physician who would
not "advise her employer to grant her time off due to her medical condition" because the
physician "[e]xplained to [Plaintiff] that she does not have a medical condition that would
prevent her from going to work." (*Id.*) The physician noted that Plaintiff "was very upset because
her psychotherapist thought that her taking some time off work was advisable." (*Id.*)

evaluations of Plaintiff's impairments.[6] (*See* Tr. 465, 764.) Therefore, the Court finds that the ALJ did not err by discounting Dr. Allen's opinion based in part on its reliance on Plaintiff's self-reports.

In summary, the Court finds that the ALJ presented specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Allen's opinion.

### 2.    Dr. McConochie

#### a.    Dr. McConochie's Opinion

On April 3, 2017, Dr. McConochie completed a "Psychodiagnostic Evaluation" at the request of "[Disability Determination Services] for an evaluation to help determine [Plaintiff's] eligibility for benefits with a special request to clarify possible evidence of PTSD, depression and anxiety." (Tr. 467-72.) Dr. McConochie diagnosed Plaintiff with generalized anxiety disorder, persistent depressive disorder, and PTSD, noting the PTSD was primarily the result of child abuse by Plaintiff's father. (Tr. 471.) Dr. McConochie discussed Plaintiff's social functioning and daily activities, noting that "[d]epression and anxiety can sometimes interfere with [Plaintiff's] ability to relax and have fun[.]" (*Id.*) Dr. McConochie also opined that Plaintiff had no impairment in the area of understanding and remembering instructions, "mild impairment" in the area of engaging in appropriate social interaction, and mild to moderate impairment in the area of sustaining concentration and attention, commenting that Plaintiff had "no major problems in this area [but has s]ome difficulties concentrating when watching television [and m]ay be troubled by flashbacks and other worries." (Tr. 471-72.)

---

[6] Although Plaintiff reports that Dr. Allen treated her for more than three and a half years (Pl.'s Opening Br. at 6), the record includes very few records from Dr. Allen. (*See* Tr. 464-65, 764, 796-97, including the two opinion letters and the unsigned "reasonable accommodation" form discussed herein, and a single page "treatment plan" from March 5, 2017.)

Dr. McConochie's overall conclusion was that Plaintiff has had ongoing problems with depression and anxiety but has a "good to excellent" prognosis:

> [Plaintiff] is a 23-year-old woman who has had lifelong problems with depression, worry and anxiety, stemming to an important degree from childhood abuse by her father, apparently. She is making good use of psychotherapy and prognosis is good to excellent for continued progress. She struggles with temptations to binge drink occasionally and has used marijuana excessively in the past. She still uses it on a daily basis. Thus, substance abuse should be monitored as part of her continuing psychotherapy. She appears to be able to manage money responsibly.

(Tr. 472.)

### b.    The ALJ's Treatment of Dr. McConochie's Opinion

After summarizing Dr. McConochie's report and findings, the ALJ gave Dr. McConochie's opinion "some weight" because Dr. McConochie "examined the [Plaintiff], but did not offer an opinion in quantifiable functional terms." (Tr. 25.)

### c.    Disposition

Plaintiff argues that the ALJ failed to identify clear and convincing reasons supported by substantial evidence in the record to discount Dr. McConochie's opinion. (Pl.'s Opening Br. at 14.) The Commissioner responds that the ALJ may discount "vague medical opinions that do not adequately describe a claimant's functional limitations." (Def. Br. at 5.)

Assuming without deciding that the ALJ erred by discounting Dr. McConochie's opinion only on the ground that it was not stated in "quantifiable functional terms," the ALJ's RFC determination was nevertheless consistent with the mild and moderate limitations Dr. McConochie identified in his opinion. Specifically, the ALJ's RFC limits Plaintiff to "short, simple, routine job instruction consistent with unskilled work" and instructs that Plaintiff "needs a static work environment with few changes in work routines and settings [and Plaintiff] cannot perform high production work such as assembly line quote work." (Tr. 23.) This limitation

adequately captures the mild to moderate impairment in sustaining concentration and attention identified by Dr. McConochie. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding the ALJ's RFC limitation that claimant could "perform simple, routine, repetitive sedentary work, requiring no interaction with the public" properly incorporated limitations identified by treating and examining doctors related to "attention, concentration, and adaptation"); *see also Howard v. Massanari*, 255 F.3d 577, 582 (9th Cir. 2001) (rejecting a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace).

Further, the ALJ limited Plaintiff to "only occasional interaction with the public and coworkers" (Tr. 23), which accounts for Dr. McConochie's opinion regarding Plaintiff's mild impairment related to social interaction. *See, e.g.*, *Merriam v. Astrue*, No. 3:10-CV-6405-KI, 2012 WL 602488, at *11 (D. Or. Feb. 23, 2012) ("The ALJ, however, translated [the examining psychologist's] opinion of moderate to marked impairment interacting with the general public, supervisors, and co-workers, and mild impairment interacting with her world and maintaining social functioning, into an RFC of limited contact with the general public, and restrictions on her contact with co-workers and supervisors; the RFC is consistent with [the examining psychologist's opinion." (citing *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010))); *see also Gene R. v. Saul*, No. 8:20-cv-00144-JDE, 2020 WL 6826207, at *9 (C.D. Cal. Nov. 20, 2020) ("Similarly, the ALJ adequately accommodated [the examining psychologist's] limitations on Plaintiff's ability to relate to coworkers and the public in an appropriate manner by restricting Plaintiff to only occasional and superficial interaction with coworkers, and precluding public interaction.") (simplified).

PAGE 19 – OPINION AND ORDER

Accordingly, any error in assigning less weight to Dr. McConochie's opinion was harmless. *See Chavez v. Astrue*, No. 10-cv-549, 2011 WL 3420848, at *2-3 (C.D. Cal. Aug. 4, 2011) (holding that the ALJ's RFC determination was consistent with, and arguably more restrictive than, the discounted medical opinion and thus any error was harmless).

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 4th day of March, 2022.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge